The PRUDENTIAL INSURANCE COMPA-
NY OF AMERICA, a corporation,
Plaintiff in Error,

v.

PRUDENTIAL LIFE AND CASUALTY IN-
SURANCE COMPANY, a corporation, and
Joe B. Hunt, Insurance Commissioner of
the State of Oklahoma, Defendants in Er-
ror.

No. 38917.

Supreme Court of Oklahoma.

July 17, 1962.

Rehearing Denied Dec. 11, 1962.

Application for Leave to File Second
Petition for Rehearing Denied
Jan. 22, 1963.

V. P. Crowe, William G. Paul, Embry, Crowe, Tolbert, Boxley & Johnson, Okla-

homa City, for plaintiff in error. Wellington S. Crouse, Houston, Tex., of counsel.

Robert D. Allen, Oklahoma City, for defendant in error, Joe B. Hunt, Insurance Commissioner.

John A. Johnson, of Savage, Gibson, Benefield & Shelton, Oklahoma City, for defendant in error, Prudential Life & Casualty Insurance Company.

WILLIAMS, Chief Justice.

On July 31, 1957, Prudential Life and Casualty Insurance Company, hereinafter referred to as respondent, filed with the Insurance Commissioner of the State of Oklahoma, hereinafter referred to as Commissioner, its plan for conversion into a stock legal reserve life insurance company to be named Prudential Life and Casualty Company. The Commissioner on August 1, 1957, issued respondent a certificate of authority to transact a life and accident and health insurance business in the State of Oklahoma under said name. On September 16, 1957, The Prudential Insurance Company of America, hereinafter referred to as petitioner, filed with the Commissioner a request that he direct respondent to discontinue the use of any name including the word "Prudential", or in the alternative, hold a hearing on the matter "for the reason that the use of the same causes uncertainty and confusion due to the similarity of that company's name to the name of" petitioner. After a hearing on October 7, the Commissioner on January 20, 1958, entered an order refusing to take such action. Petitioner appealed to the District Court of Oklahoma County where in a trial de novo the action of the Commissioner was sustained from which petitioner now appeals.

Petitioner is a corporation organized and existing under the laws of the State of New Jersey and has transacted business as a life insurance company continuously under its present name since 1877. It was licensed to do business in what is now the State of Oklahoma in 1901, and has thereafter transacted business in this state.

Petitioner is authorized to carry on and does engage in the life and accident and health business in all of the states of the United States and the Provinces of the Dominion of Canada. Petitioner is the second largest life insurance company operating in the United States with assets at the end of 1957 valued at $13,919,000,000. It spends almost $9,000,000. per year on advertising, twice as much as the company spending the next highest amount.

Respondent was incorporated in 1927 under the name of United Protective Association which was later changed to Continental Travelers Insurance Company. In 1953 the name was changed to Mutual Life and Accident Insurance Company. It indicated in its 1957 annual report, assets of $36,242.00.

The evidence and testimony at the trial below developed that the change of name of respondent to Prudential Life and Casualty Company and all the steps to effectuate such change took place without prior notice to or knowledge of petitioner; that at no time did petitioner consent to or acquiesce in such change of name; that several persons purchased insurance from respondent under the assumption that they had purchased one of petitioner's policies; that some of such purchasers retained their policies after they learned that petitioner and respondent were not one and the same; that persons receiving respondent's advertising had thought it was petitioner's; that claims by respondent's policy holders had been submitted to petitioner; that mail intended for respondent had been sent to petitioner; that complaints against respondent had been sent by the commissioner's office to petitioner; that a public recognition survey indicated that a great majority of those interviewed who associated the word "Prudential" with insurance connected it with petitioner.

We agree with the trial court that the issue is whether the commissioner's act of issuing a certificate of authority to respondent to engage in business under the name

Prudential Life and Casualty Insurance Company was correct.

Petitioner's "Proposition I" is:

"The Commissioner's Acts permitting Respondent to use its present name are unlawful and void and the court's determination that they should be upheld is contrary to the weight of the evidence."

Petitioner first contends under this proposition that 36 O.S.1959 Supp. § 620 was applicable to the commissioner's act of issuing a certificate to respondent. This section is as follows:

"A. No insurer shall be authorized to transact insurance in Oklahoma which has or uses the name so similar to that of any insurer already so authorized as to cause uncertainty or confusion; except, that in case of conflict of names between two insurers the Insurance Commissioner may permit or require the newly authorized insurer to use in Oklahoma such supplementation or modification of its name as may reasonably be necessary to avoid such conflict."

The commissioner and the District Court held 36 O.S.1959 Supp. § 2502 to be the applicable statute. It reads in part:

"The persons mentioned in Section 2501 shall be designated as corporators, and such persons shall associate themselves by articles of agreement in writing, duly signed and acknowledged, setting forth:

"First: The corporate name of the proposed corporation, which shall not be the name of any corporation heretofore incorporated or doing business in this state for similar purposes, or any such imitation of such name calculated to mislead the public. * * *"

A study of section 2502 reveals that the primary purpose of the legislature in passing it was to prescribe the contents of the articles of agreement of a proposed insurer. The reference to names of proposed insurers was incidental to the pri-

mary subject of said section. On the other hand, section 620 deals exclusively with names of insurers seeking authorization to do business in the State of Oklahoma. The primary purpose of this section was to set a standard for the commissioner to follow in approving or rejecting names of proposed insurers.

■ The commissioner and the district court should have considered 36 O.S.1959 Supp. § 620 as well as 36 O.S.1959 Supp. § 2502.

Under its first proposition petitioner next contends that "The Court's judgment upholding the Commissioner's act of allowing Respondent to use its present name is contrary to overwhelming and uncontradicted evidence." Respondent contends that the fact "That large expenditures for advertising may have created a 'special significance' in a word in a corporate name does not give the right to monopolization of such single descriptive word, arising from the peculiar manner of advertising, but only the right to prevent its use by a competitor in any unfair way." We are favorably impressed with both of these contentions. The question before us is whether respondent's name is deceptively similar to that of petitioner. No relief is sought against any other party. The propriety of such use in any other situation would have to be determined in the light of the circumstances surrounding such situation. Metropolitan Life Insurance Co. v. Metropolitan Insurance Co., 7 Cir., 277 F.2d 896.

In Carpet City v. Carpet Land, Okl., 335 P.2d 355, this court said:

"Practices between competitive businesses that tend to lead to unfair competition will not be permitted. Neither will a competitor be permitted to use even a generic term in conjunction with other terms, designs, or symbols which serve to confuse the identity of its business with that of another so as to mislead the public and divert business from its competitor to it. However, the

trade name, design or symbol used must be such that the ordinary buyer, exercising ordinary intelligence and observation in business matters, will certainly or probably be deceived, a mere possibility of deception and confusion being insufficient. Coalgate Abstract Co. v. Coal County Abstract Co., [180 Okl. 8, 67 P.2d 37] supra; Stillwater Milling Co. v. Eddie, 188 Okl. 234, 108 P.2d 126; O. K. Bus & Baggage Co. v. O. K. Transfer & Storage Co., [63 Okl. 311, 165 P. 136] supra; Poulos v. Carter, [200 Okl. 325, 193 P.2d 591] supra."

More than twenty persons testified that they purchased insurance from respondent under the assumption they had purchased it from petitioner. Petitioner introduced testimony that advertising was received from respondent by persons who thought it was petitioner's. Hospital employees testified that they submitted claims to petitioner when they should have been sent to respondent. Even employees in the Commissioner's office wrote petitioner concerning complaints made against respondent. Much mail was misdirected to both petitioner and respondent.

Dr. F. of the University of Illinois supervised a public recognition survey in the State of Oklahoma. In testifying for petitioner as an "expert" in consumer marketing he said: "I would say that the word 'Prudential', on the basis of the results of the survey, is closely identified with the Prudential Insurance Company, and more generally with the insurance industry." " * * By reason of the survey, it would seem to indicate that there was much confusion between the names of the two companies on account of the word 'Prudential' ".

The respondent argues, "The little company's primary objection to admissibility of conclusions from the survey was that it was unfair and that it was 'weighted' (like a 'sinker' on a jury), not hearsay." Respondent further contends that the questionnaire was "designed to lead any interviewee at the outset to give a desired answer, and their answers directly lead and suggest to

the interviewee the further answers thereafter requested * * *."

Respondent nor the commissioner offered any testimony to the effect that "the survey was not conducted in accordance with approved statistical methods."

■ Obviously the value of a survey depends upon the manner in which it was conducted. Were slanted or fair techniques used? From our examination of all the evidence pertaining to the survey we cannot say that it was not fairly conducted. We consider it to have some probative value. The results of it parallel other evidence offered by petitioner to the effect that the public was confused by the use of the word "Prudential" in respondent's name.

■ We think the survey not excludable on the ground of hearsay, and respondent and the commissioner do not seriously so contend.

In United States v. 88 Cases, More or Less, Containing Bireley's Orange Beverage, 3 Cir., 187 F.2d 967, the court said:

"Appellant objected to the admission by the district court of certain surveys taken on behalf of the government. * * * The principal contention, however, was that the surveys were hearsay and therefore inadmissible. The hearsay objection is unfounded. For the statements of the persons interviewed were not offered for the truthfulness of their assertions as to the composition of the beverage. They were not offered to prove that Bireley's Orange Beverage is or is not orange juice. They were offered solely to show as a fact the reaction of ordinary householders and others of the public generally when shown a bottle of Bireley's Orange Beverage. Only the credibility of those who took the statements was involved, and they were before the court. The technical adequacy of the surveys was a matter of the weight to be attached to them. And claimant was properly permitted to introduce elaborate testimony on this point."

The above evidence goes further than is required by prior decisions of this court and the applicable statutes, 36 O.S.1959 Supp. §§ 620 and 2502. Confusion was shown to actually exist in the minds of the public as to whether respondent is one and the same as petitioner.

Petitioner introduced evidence to the effect that it concentrated most of its advertising upon the word "Prudential" rather than its corporate name, and was known by the public by a variety of combinations of words which always included "Prudential". Many persons regularly dealing with petitioner did not know its full corporate name.

In Metal Craft Co. v. Metalcraft Heater Corp., 255 Mich. 642, 239 N.W. 364, the court said:

"In the hurry of business, it is usual, in referring to a corporation, to shorten its title to the first or the distinctive word or words of the name. Confusion of names may result from the use of identical or similar dominant words, although other dissimilar words are attached to them.

"* * * 'Metal Craft' dominates the names of both plaintiff and defendant, both because of its distinction and inherent force and because of its position at the commencement of their titles. The use by defendant of the word 'Heater' and of 'Corporation' instead of 'Company' does not emphasize the distinction from plaintiff's name. It would be common to call either the 'Metal Craft Company' or 'Corporation' in ordinary reference to it. The chance for confusion is increased by use of 'Metalcraft' at the commencement of defendant's name, because the corporations would be close neighbors in directories, telephone books, trade and address lists, and wherever records of names are kept. The probability of confusion is apparent."

Such language is most applicable to the instant case. Of course, one viewing the corporate names of petitioner and respondent in juxtaposition would observe the dif-

ference, but that is not how the public sees them. Such is not a satisfactory manner of determining the likelihood of confusion. Except in rare instances, the corporate names are seen separately by the public. Petitioner's name does not include the word "life", but the evidence indicated that this word was often inserted by the public when reference was made to petitioner.

Respondent cites the case of Brotherhood of Painters etc. v. United Home Industrial Union, 184 Okl. 20, 84 P.2d 1101, as authority for the importance of reviewing in juxtaposition the corporate names of petitioner and respondent. We do not so view that opinion. Therein the court was talking about emblems and labels, not names. The Court said:

"In American Automobile Ass'n v. American Automobile Owners' Ass'n, [216 Cal. 125, 13 P.2d 707, 83 A.L.R. 699] supra, it is said (page 713 [of 13 P.2d]): 'Of course, the only rule by which resemblances or differences can be detected is by physical comparison. Placing the objects of disputed similarity side by side is the method adopted by all courts, that not only the size, shapes, and forms may be brought into juxtaposition, but also that the color effect will be brought into the picture. There can be no other fair method of arriving at the truth. This is the approved test and the only way by which similitudes and differences may be compared. Whether one emblem resembles another is to be determined by an inspection of the points of difference and resemblance, as a whole, and not merely of points of resemblance."

Petitioner made no contention in 1930, at which time it had been doing business in what is now the State of Oklahoma since 1901, that the entry of the Texas Prudential Insurance Company into business in this state was likely to cause confusion. The manager of the Oklahoma State Ordinary Agency for petitioner testified that he did not particularly experience any confusion

while Texas Prudential Insurance Company operated in Oklahoma.

The words "Life" and "Casualty" in respondent's name are descriptive. They do not serve to distinguish respondent's name from petitioner's. The survey conducted by Dr. F. indicated that the name most often associated with the word "Prudential" was "Prudential Life Insurance Company."

In United Life Ins. Co. v. United Ins. Co., Fla., 70 So.2d 310, an Illinois Company, United Ins. Co., sought to do business in Florida and a local company sought to enjoin the Illinois company from doing business in such state because of similarity of names of the two companies. The Supreme Court of Florida affirmed the Circuit Court in holding that the Illinois Company could do business in Florida if it would add qualifying words "of Illinois" to its corporate name. Therein the court said:

"Where the words selected (by a corporation) for a corporate name are chosen from the public domain and imply a national business, and where the territory in which it operates is one that will probably be reached through the natural expansion of an established institution, which is in fact national in scope, (said corporation) cannot demand a complete exclusion when the (established institution) bids entry, but must be content with such explanatory matter as will prevent deception, although it may not entirely eliminate confusion by the careless."

In 115 A.L.R., Protection of Corporate Name, p. 1243, is the following language:

"As was pointed out in the annotation in 66 A.L.R. at p. 951, it is a universally recognized rule that a corporation is entitled to protection against the use of the same or a similar name by another corporation."

In the case of Fidelity Appraisal Co. v. Federal Appraisal Co., 217 Cal. 307, 18 P.2d 950, the Court said:

"The doctrine is so well settled by a multitude of cases that it is not neces-

sary to cite specific cases, that words in common use are regarded as common property, and may be used by others in combination with other descriptive words, provided they are not so used in combination with other descriptive words, symbols, or designs as to render it probable that they would mislead persons possessing ordinary powers of perception."

█ We think that the evidence demonstrates that the similarity of respondent's name to that of petitioner had a deceptive effect in the mind of the public and that confusion resulted therefrom.

Respondent contends that it and petitioner are not in competition and that this is a defense to the action. Respondent argues that its business is largely accident and health, while petitioner concentrates on life insurance; that it sells to a different class of people than does petitioner, and issues a different type policy.

█ We do not agree. Both companies sell life insurance, and accident and health insurance to the public. Neither will refuse to sell a policy to a desirable risk. Admitting for the moment that respondent and petitioner are not now in competition, nevertheless we cannot agree with the argument. There would be nothing to prevent respondent in the future from emphasizing life insurance, contacting the same prospects as petitioner and selling almost duplicate policies. There is no assurance that active competition would not develop at a later date.

In Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co., 10 Cir., 95 F.2d 711, the court said:

"The further contention is that plaintiff cannot prevail because the parties are not competitors. Plaintiff is engaged on a large scale in the production, refinement, and distribution of crude oil and its products. Defendant is engaged on a small scale in the production of crude oil and the sale of it in the pipe line. But the right to enjoin a junior from the perfidious use of the trade name of the senior is not confined to a case of actual market competition in identical products. It extends to a case in which the junior represents its products as those of the senior. A producer or manufacturer has a sufficient economic interest in its trade-name to restrain another from exploiting it in the sale of his products, although the two may not be engaged in the production, sale or distribution of identical products. Western Auto Supply Co. v. Knox, [10 Cir., 93 F.2d 850] supra."

Respondent's present name is the fourth that it has used since its incorporation. It would appear that it is attempting to find a name that would command business. It has now used in its name the most highly advertised word in the insurance industry.

The respondent's name was of its own choosing. It is not identical with the petitioner's name. That would be too gross an invasion of the petitioner's right.

In the case of Stillwater Milling Co. v. Eddie, 188 Okl. 234, 108 P.2d 126, this court stated:

"In the case of Home Insulation Co. v. Home & Building Insulation Co., 175 Okl. 428, 52 P.2d 1065, 1067, it was said:

" 'Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another. What similarity is sufficient to effect the object has to be determined in each case by its own circumstances. We may say, generally, that a similarity which would be likely to deceive or mislead an ordinary unsuspecting customer is obnoxious to the law.' "

In Home Insulation Co. v. Home and Building Insulation Co., supra, this court said:

" 'The true test, we think, that finds support almost unanimously is whether or not the use of the name is made honestly and in good faith, and without any intention of deriving any benefit

from the reputation or standard of another having the same name and engaged in the same business, other than the similarity of names. As was said in the case of J. I. Case Plow Works v. J. I. Case Threshing Mach. Co., 162 Wis. 185, 155 N.W. 128, 134: "The legal principles which are controlling here are simply the principles of old-fashioned honesty. One may not reap where another has sown, nor gather where another has strewn."

" 'In the instant case the names are not identical, but the similarity of the two names is readily apparent. The rule seems not to be different where the names are similar than where they are exactly alike. Generally speaking, it is the similarity which is likely to deceive or mislead an ordinary unsuspecting customer that will be restrained by injunction, where the other conditions are present.' "

The commissioner contends that "On appeal from an order entered by the Insurance Commissioner, the District Court of Oklahoma County is confined to a review of the proceedings before the Commissioner, and a determination of whether or not such order is against the weight of the evidence, is arbitrary, capricious or contrary to law, and where the evidence is in conflict, the Commissioner's findings will not be disturbed on appeal because it is possible to draw another conclusion from the evidence."

We do not agree.

The hearings before the commissioner evidently were pursuant to 36 O.S.Supp. 1959 § 314 which provides "The Insurance Commissioner may hold hearings for any purpose within the powers and jurisdiction conferred upon him by this code. The Insurance Commissioner shall hold a hearing if required of him by any provision of this code or upon written demand therefor by any person aggrieved by any act, threatened act or failure of the Insurance Commissioner to act * * *." The commissioner

in his brief assumes this to be the applicable statute.

Respondent requests that this court determine 36 O.S.Supp.1959 § 1206 to be the applicable statute. This statute provides for a "show cause" hearing brought by the commissioner. The instant complaint was instituted by petitioner on written demand as one aggrieved by an act of the commissioner. The commissioner did not direct respondent "to show cause why an order should not be made by the commissioner requiring such person to cease and desist from the Acts, Methods or Practices so complained of." The District Court held that the proceedings were pursuant to 36 O.S.Supp.1959, 314–320.

Section 319 provides "In conducting any such hearing the Insurance Commissioner shall sit as a quasi judicial officer. * * *"

In its brief Respondent states:

"We agree that thirty-nine years before enactment of the Insurance Code, this court held that the Insurance Commissioner was authorized to consider any principle of equity of which the courts of this state take cognizance and that in so doing he exercised 'quasi-judicial power'; Mutual [Benefit] Life Insurance Co. of Newark v. Welch, 1918, 71 Okl. [59] 591, 175 P. [45] 43.

" * * * We would agree that he (Commissioner) 'also has the same power to determine whether a proposed name for an insurance company' should be approved and also whether the use of one word of a name previously authorized 'violates any law or principal of equity cognizable in this state.' "

Section 320 provides: " * * * The Court (District Court) shall hear the matter de novo, * * *."

The Commissioner argues that "If 36 O.S.Supp.1959 § 320, governs appeals from the action of the Insurance Commissioner, and is held to allow the court to exercise an independent discretion with respect to matters committed to the Commissioner's discretion, or to authorize the Court to take

any action other than to review the Insurance Commissioner's Order to determine whether or not it is arbitrary, capricious, contrary to law, or against the preponderance of the evidence, the said statute would appear to be an unconstitutional delegation of executive power to the courts in violation of Article IV, Section 1, of the Constitution of the State of Oklahoma, hereinbefore cited."

In Chandler Materials Co. v. Board of County Commissioners, 208 Okl. 189, 254 P.2d 767, we said:

"In re Courthouse of Okmulgee County, 58 Okl. 683, 161 P. 200, and other former decisions of the court, we have consistently held that an appeal lies from an order of the Board of County Commissioners to the District Court whenever their orders or decisions are of a judicial or quasi judicial nature."

In Edge v. Board of County Commissioners, Okl., 318 P.2d 621, we said:

" '* * * In Peters v. Holder, 40 Okl. 93, 136 P. 400, this Court announced in the third paragraph of the syllabus as follows: 'Williams' Const. Okl. art. 7, § 14: "Until otherwise provided by law * * * in all cases, civil and criminal, appealed from justices of the peace to the county court, there shall be a trial de novo on questions of both law and fact"—citing 8 Words and Phrases, p. 7108.' *

"In the body of the opinion the Court said: ' "Trial de novo" means trial of entire case anew, as if no action had been instituted in a court below—a second time. 8 Words and Phrases, p. 7108.' *

"In School District No. 84 v. Asher School District No. 112, 168 Okl. 282, 32 P.2d 897, 900, this Court quoted from Shultz v. Lempert, 55 Tex. 273, at page 277, as follows:

" 'Trial de novo does not mean a trial on appeal and on nothing but the record to correct errors, but does mean a trial

* Words and Phrases, "Trial De Novo".

of the entire case anew, hearing evidence, whether additional or not.' "

■ 36 O.S.Supp.1959 § 319 provides that in hearings such as held by the commissioner herein that he sits as a quasi judicial officer. His orders are appealable to the District Court for a trial de novo (section 320). The district court was in error when it held "The findings by the commissioner are entitled to great weight in this Court upon those matters committed to his executive judgment." The matter should have been tried as though it had never been before the commissioner.

The question arises as to the reason for respondent's adoption of its latest name. Petitioner and respondent do not agree on the answer. For whatever reason it was done, it is clear to us that the result has been to create a deceptive and confusing situation in the public mind.

It is so easy for one who wishes to sell goods upon their merit, to select from all the names available one which by no possibility can cause confusion between his goods and those of a highly successful competitor that the courts look with suspicion upon one who, in choosing a name, approaches so near to his successful rival that the public may fail to distinguish between them. Florence Mfg. Co. v. Dowd Co., 2 Cir., 178 F. 73.

■ This cause is remanded to the District Court of Oklahoma County with directions that it in turn remand the same to the Insurance Commissioner of the State of Oklahoma and he be directed and ordered to cause respondent immediately to cease doing any advertising or the conducting of any new business under its present corporate name.

In the event that respondent in changing, qualifying and/or modifying its present corporate name continues therein the word "Prudential" said word is never to be used by respondent with greater emphasis thereon than any other word or words, and shall not be the first word nor the dominant word in such corporate name. Nor shall respond-

ent use in advertising or business relations the word "Prudential" in such fashion or manner as would confuse or tend to mislead the insurance buying public.

BLACKBIRD, V. C. J., and HALLEY, JACKSON and BERRY, JJ., concur.

WELCH, DAVISON, JOHNSON and IRWIN, JJ., dissent.