STILLWATER MILLING CO. v. EDDIE et al.

No. 29008. Dec. 10, 1941.

*108 P. 2d 126.*

Swank & Swank, of Stillwater, Keaton, Wells & Johnston, all of Oklahoma City, and K. D. Greiner, of Stillwater, for plaintiff in error.

Twyford & Smith and William J. Crowe, all of Oklahoma City, for defendants in error.

OSBORN, J. This action was instituted in the district court of Oklahoma county by Stillwater Milling Company, hereinafter referred to as plaintiff, against B. D. Eddie and Camil Eddie, copartners, doing business under the firm name of Superior Feed Mills, hereinafter referred to as defendants, wherein plaintiff sought to enjoin and restrain defendants from selling or offering for sale its commodities bearing a label or trade-mark which was alleged to be similar to the label and trade-mark of plaintiff. Issues were joined, the cause was tried to the court and a judgment entered in favor of defendants. From said judgment plaintiff has appealed.

Plaintiff alleged that it is engaged in the business of manufacturing and selling flour, corn meal, dairy feeds, poultry feeds, and other like commodities; that its principal place of business, including its mills and elevators, is at Stillwater, Okla.; that it has operated its business within the State of Oklahoma and adjoining states for more than 20 years; that on March 10, 1930, plaintiff filed its trade-mark with the Secretary of State of the State of Oklahoma, and since the year 1927 it has used its trade-mark in manufacturing, advertising, and selling its products and has spent large sums of money in advertising; that its trade-mark has thus been brought to the knowledge of the public throughout the State of Oklahoma and adjoining states and has resulted in large and extensive business throughout plaintiff's trade territory; that plaintiff's commodities are generally placed upon the market, offered for sale and sold in bags labeled with its own device and trade-mark; that said commodities were known to the public and to the buyers and consumers thereof by the name of "A & M" and by the use of an orange and black striped bag.

Plaintiff further alleged that in the year 1930 defendants placed upon the market an inferior brand of commodities under a brand and designation similar to the trade-mark and device of plaintiff for the fraudulent purpose of deceiving purchasers and consumers of plaintiff's commodities and have actually misled said purchasers to the belief that said inferior commodities are manufactured by plaintiff, resulting in the diminution of plaintiff's business and the profits thereof. It was further alleged that defendants placed upon the market a better grade of commodities under their own trade-mark and label which they distinguish by their registered trade-mark of "Superior Feeds" which they sell at a higher price and "deliberately, with malice aforethought and with the intent to destroy the business of the plaintiff, designate an inferior brand of commodities which they sell at a lower price under the trade-name, mark and designation of 'A & M.' That by reason thereof the general esteem and reputation of the commodities manufactured by the plaintiff has been injured, its business diminished and its profits decreased."

The principal allegations of defendants' answer are as follows:

"For further defense said defendants deny, specifically, that they have ever acted maliciously in connection with the manufacture and sale of feed products in connection with the name, label and colors employed in the manufacture and sale of said products. Defendants further allege, charge and state that the formulae of the A & M College for different kinds, classes and grades of feed and mash are in common use by millers and manufacturers of such products and

236

that the same are made up and put out by the A & M College of Stillwater, Oklahoma, for the benefit of the public, generally, and manufacturers of the class in which the defendants and plaintiff fall, and that the plaintiff, as well as the defendants, and other firms and corporations engaged in the manufacture and sale of feeds and mash products for fowl and animals, have the right to and do use such formulae put out by said A & M College, and also have the right to and do use the colors which happen to be the official insignia of said Agricultural College. That these defendants have not simulated or copied the wording or colors of the plaintiff but have selected and used wordings and colors suitable to their own legitimate business and manufacture, all of which has been done and is being done, in the utmost good faith and well within the legal rights of the defendants.

"Defendants specifically deny that the lettering and colors used by defendants are so similar to those which are used by the plaintiff as to constitute an infringement or encroachment upon any pretended right of the plaintiff.

"The defendants further allege, charge and state that for nearly five years last past said defendants have engaged in the manufacture and sale of egg mash feed under the brand name of ECCO EGG MASH 'A & M FORMULA', using the colors of red, black, yellow and white, and that said defendants have laid out and expended a large sum of money and labor, for a period of nearly five years, in advertising and putting forth said feed product under said name and insignia. That the plaintiff has stood by, with full knowledge of said facts, and permitted said defendants to so use said names and colors and expended said time and money in advertising and using the same, without any action on its part to prevent the same, and that thereby plaintiff has become and is estopped from questioning the right of said defendants so to do.

"Defendants further allege that the name and colors used by the plaintiff are not such as can be the subject of legitimate exclusive use but are such as may be used by any persons, firms or corporations engaged in similar business, and are not the subject of exclusive copyright or use."

The parties introduced at the trial, as exhibits, sample bags in which their goods are packed for sale to the public. These bags were attached to the case-made as exhibits and are before this court for examination and inspection. The bags are approximately 39 inches in length and 22 inches in width. Upon the bag of the plaintiff company are superimposed alternate vertical black and orange stripes. In the center of the bag is a circle containing the words "A and M EGG MASH made by STILLWATER MILLING COMPANY, Stillwater, Oklahoma." The letters "A and M" are about five inches in height. On each side of the bag are printed vertically the words "Feed the A & M Way." This sentence is in white letters superimposed upon the black stripes at either side of the bag. The bag of the defendant company is approximately the same size as the plaintiff's bag. At the top of the bag appears the words "ECCO EGG MASH." The letters in the word "ECCO" are red in color, the letters are heavy and approximately six inches in height. In the center of the bag is a circle approximately nine inches in diameter with an orange background containing the words "A and M Formula" in black letters. The letters "A and M" are approximately five inches in height. Immediately above the circle and partially surrounding the same are the words, in orange colored lettering, "Oklahoma A & M College Standard Formula." Underneath the circle are the words "Manufactured by Superior Feed Mills, Oklahoma City, U. S. A." All of the lettering on the bag, except the lettering inside the circle and immediately above the same, is in black and red coloring.

Plaintiff's principal place of business is at Stillwater where the Oklahoma Agricultural and Mechanical College is located. The college is generally referred to as A & M College. Its colors are orange and black. It is shown that certain formulae for mixing of various kinds of poultry and dairy feed are prescribed by the College. The plaintiff does not use these formulae in mixing

any of the feeds it offers for sale, but uses its own formulae, which it contends are better than the formulae prescribed by the College. The defendant company also uses its own formulae in mixing its higher priced feeds. It is claimed by the parties hereto that the formulae prescribed by the College require the use of ingredients which are locally produced and that by the use of such formulae feeds can be prepared to sell at a lower price, but by using their own formulae, which require other ingredients, a better feed is produced and the price is somewhat higher than the feeds mixed according to the College formulae.

In the brief of plaintiff it is conceded:

"We do not take the position that the defendants could be restrained from placing on the market a feed made up according to formulas recommended by the Oklahoma Agricultural and Mechanical College. That would be the right of any individual in mixing feed for his own use, or would be the right of any manufacturer to mix such feed and to sell it to the public."

The principles by which it may be determined whether or not simulation of an established trade-mark or trade-name constitutes unfair competition and thus justifies injunctive relief have been recently reiterated by this court. In the case of Coalgate Abstract Co. v. Coal County Abstract Co., 180 Okla. 8, 67 P. 2d 37, it was held:

"Under the law of unfair competition, in order to enjoin the use of a trade-name there must be such a similarity to one formerly used or employed that the ordinary buyer, exercising ordinary intelligence and observation in business matters, will certainly or probably be deceived. Mere possibility of deception and confusion is not sufficient."

In the case of American Auto. Ass'n v. American Auto. Owners' Ass'n (Cal.) 13 P. 2d 707, 83 A.L.R. 699, 708, it was said:

"The decisions of this court and courts of other jurisdictions make it plain that the law of unfair competition does not pretend to protect purchasers against falsehoods which salesmen may tell. It does not assume to perform the functions of penal statutes. The law is well stated in Southern California Fish Company v. White Star Canning Company, supra, as follows:

" 'The law of unfair competition does not protect purchasers against falsehoods which the tradesman may tell; the falsehood must be told by the article itself in order to make the law of unfair competition applicable.' Hill Bread Co. v. Goodrich Baking Co. (N. J. Ch.) 89 A. 863. Each of the housewives whose testimony plaintiff relies on to show specific instances of actual deception admitted that, by using her eyes, she could readily detect the difference in the two packages. 'A resemblance which would deceive an expert or very cautious purchaser may still give a right of action, but a resemblance which would deceive only an indifferent or careless purchaser gives no right of action. The true rule lies between these extremes, condemning what would be reasonably calculated to deceive the common or usual purchaser of the given article when exercising ordinary care.' See, also, Howe Scale Co. of 1886 v. Wyckoff, 198 U. S. 118, at page 140, 25 S. Ct. 609, 614, 49 L. Ed. 972."

In the case of Home Insulation Co. v. Home & Building Insulation Co., 175 Okla. 428, 52 P. 2d 1065, 1067, it was said:

"*Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good of another.* What similarity is sufficient to effect the object has to be determined in each case by its own circumstances. We may say, generally, that a similarity which would be likely to deceive or mislead an ordinary unsuspecting customer is obnoxious to the law."

In the case of Brotherhood of Painters, etc., v. United Home Industrial Union, 184 Okla. 20, 84 P. 2d 1101, it was said:

" '* * * The plaintiff cannot appropriate to its exclusive use any general design or symbol composed of common geometrical designs or combinations thereof. 26 R.C.L. 880. No one may acquire the exclusive right to the use of an outline such as a diamond, square,

triangle, circle, or combination thereof. American Automobile Ass'n v. American Automobile Owners' Ass'n, 216 Cal. 125, 13 P. 2d 707, 83 A. L. R. 699.

"It is only when the alleged unfair competitor not only adopts the general outline, but also the lettering, marks, coloring, and other distinguishing features, and so uses these to confuse the identity of his business with that of another and thereby mislead the public, that the law acts. O K Bus & Baggage Co. v. O K Transfer & Storage Co., 63 Okla. 311, 165 P. 136."

In the case of O K Bus & Baggage Co. v. O K Transfer & Storage Co., 63 Okla. 311, 165 P. 136, L.R.A. 1918A, 956, it was said:

"* * * However, under this rule, one cannot claim protection for the exclusive use of a trade-name which would give him a monopoly in the sale of any goods other than those of his own. Neither can a generic name or a name descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade-mark, and the exclusive use of it be entitled to legal protection. Canal Co. v. Clark, 13 Wall. 311, 20 L. Ed. 581; Amoskeag Mfg. Co. v. Trainer et al., supra."

The greater portion of plaintiff's evidence related to certain oral representations made by agents and dealers who handled defendant's products, which representations related to the merits of the respective brands of feed of the plaintiff and defendant companies and indicated an attempt to confuse "A & M" brand with "A & M" formula. This evidence is of no value in determining the issue. The law does not protect against falsehoods told by salesmen, but only against falsehoods told by the article itself. The issue is determinable solely by examination of the containers in which the articles are offered for sale.

The container of defendant uses the term "A and M Formula." It had a right to use the formula and by lettering on the bag to inform prospective buyers that the contents were mixed according to such formula. The simulation of which plaintiff complains consists of the use of the circle and the colors of orange and black. Thus there is presented a problem similar to that before the court in the case of Wunderlich v. Cash (C.C.A. 5th) 33 Fed. 2d 118, wherein it was said:

"The evidence showed that, after appellant had for many years been marketing a product put up in packages having on them the words 'White Cross Kidney Liver and Blood Tea' and a Maltese cross with lettering and fancy trimmings around it, the package being white and the printing on it black, and selling for 10 cents each, appellee began marketing in the same trade territory his medicinal preparations put up in packages having on them the words 'White Cross Liver Medicine' and a plain Greek cross; his package having a red background with the printing on it in white, and the price 25 cents being stated in print. The packages are dissimilar and of different sizes. The evidence was without conflict to the effect that the differences between the packages are such that one who was familiar with appellant's product and called for it would at once detect the difference if appellee's product in his package was offered in response to the call.

"The use of the words 'White Cross' and of the figure of a cross in white being open to both appellant and appellee, the use by the appellee in the dress of his products of the words 'White Cross' and of the figure of a cross in white, unaccompanied by any deceptive imitation of appellant's manner of disclosing those words or that figure, or of any other feature of the dress in which appellant's products were marketed, was not a violation of the right asserted by the appellant. It was not enough to entitle appellant to relief sought that some purchasers might be influenced to accept appellee's product when appellant's was desired merely because appellee's package had on it in any way the words 'White Cross' and the figure of a cross in white, though the differences in other respects between appellant's and appellee's packages were such as to make them readily distinguishable by an ordinarily observant purchaser. Schlitz Brewing Co. v. Houston Ice Co., 250 U. S. 28, 39 S.

Ct. 401, 63 L. Ed. 822; Id. (C.C.A.) 241 F. 817; Coats v. Merrick Thread Co., 149 U. S. 562, 13 S. Ct. 966, 37 L. Ed. 847. The differences between appellant's and appellee's packages were such as rendered mistake unlikely, and to warrant the conclusion that, if there was any deception, it was due to resemblance in features as to which appellant had no exclusive right."

In the light of the authorities referred to when applied to the facts involved herein, we are of the opinion that the trial court did not err in refusing injunctive relief.

The judgment is affirmed.

WELCH, V. C. J., and RILEY, GIBSON, and NEFF, JJ., concur.